IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ERIC TRUSS, ET AL.,<br><br>Plaintiffs,<br><br>vs.<br><br>LACIE REYES, ET AL.,<br><br>Defendants. | CIV NO. 25-00348 JAO-KJM<br><br>ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 37) |

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 37)**

Plaintiffs Eric Truss ("Truss") and Champagne Truss, also known as Champagne Moore ("Moore") (collectively, "Plaintiffs"), proceeding pro se, bring this suit against Defendants Lacie Reyes ("Reyes"), Shelly Dill ("Dill"), and New Leaf Family Law Firm ("New Leaf") (collectively, "Defendants") for allegedly illegally obtaining and misusing a military police report that contained Plaintiffs' confidential and private information. *See* ECF No. 1. Before the Court is Plaintiffs' Motion for Preliminary Injunction ("Motion"), that seeks to enjoin Defendants from further using the report or information contained therein. ECF No. 37. For the following reasons, the Court DENIES the Motion.

# I.    BACKGROUND

## A.    Factual History[1]

Truss and Reyes share a daughter.  *See* ECF No. 1 ¶ 34.  Truss and Moore are married, live in Hawaiʻi, and are stationed at Schofield Barracks.  *Id.* ¶ 29; *see also* ECF No. 47 at 8.  On September 1, 2024, Truss and Moore were involved in an alleged domestic violence and child neglect incident ("Incident"), which was reported to the Army Military Police, who then wrote a report ("Report") about it.  ECF No. 1 ¶¶ 33, 38, 57.  Truss disclosed the Incident to Reyes because their daughter was in his care, though he alleges that their daughter was not at his residence during the Incident.  *Id.* ¶ 34.  At the time, Reyes lived in Colorado, and was herself a military servicemember.  *Id.* ¶ 23.  Upon learning about the Incident, she called Truss' previous Commander to obtain information and details about it.  *Id.* ¶ 36; ECF No. 47 at 8.

### 1.    Colorado Family Court Proceedings

Around September 2024, Truss initiated a proceeding against Reyes for a parenting plan in the Colorado District Court, County of El Paso ("Colorado Family Court").  ECF No. 1 ¶ 37; ECF No. 43-3 at 20.  During a mediation for their case, around December 2024, Reyes and Dill (her attorney from New Leaf)

---

[1] Unless otherwise indicated, the facts here are derived from the Complaint's allegations.

sent the Report to Truss' attorney and the mediator without Truss' consent.  ECF

No. 1 ¶¶ 38, 41.  Dill stated that she and Reyes obtained the Report through the

Freedom of Information Act ("FOIA").  *Id.* ¶ 40.  However, Plaintiffs later

discovered that was not true, as explained below.

On March 6, 2025, Reyes and Dill filed an unredacted version of the Report

in a Colorado Family Court proceeding and submitted false statements based on

information in the Report.  *Id.* ¶¶ 73, 75.  The allegedly false statements include:

> 1. "Mother's position further is that Father's Wife is not in a position
> to do the supervising because she is the alleged victim of Father in the
> current ongoing military case."
>
> 2. "His Wife also hid the domestic violence incident from Respondent
> and that causes her great concern. She is not able to be a neutral third-party
> supervisor."
>
> 3. "At that point Father was taken away from the home. Shortly after
> this incident, Father sent the parties' child back to the care and
> custody of Mother and her parents."
>
> 4. "Mother was notified by the military police about the incident
> shortly after it happened."
>
> 5. "The incident that happened September 1, 2024, is part of a larger
> pattern. There is a history of domestic violence from Father towards
> all past relationships including Respondent in this case. Given this
> dynamic and the interactions between the parties Mother asks for sole
> decision making."

ECF No. 1 ¶ 76; ECF No. 37-12.  Plaintiffs allege that Reyes' false representations

were part of a deliberate attempt to undermine Plaintiffs' credibility and character

and to limit their custody rights of Reyes' and Truss' daughter.  ECF No. 1 ¶ 78.

Reyes also improperly relied on allegations contained in the Report that were never verified, and of which Truss was never found culpable. *Id.* ¶¶ 80–81.

During the Colorado Family Court proceedings, Reyes and Dill submitted a witness list that included the names of a Military Police Officer and a Military Police Investigator, which they only learned from the Report—purportedly violating Army regulations. *Id.* ¶¶ 45–46, 99. Reyes and Dill also named Moore in the witness list, which was allegedly done to create division, inflict emotional distress, and harass Plaintiffs. *Id.* ¶¶ 94–95; ECF No. 37-9.

Around April 16, 2025, Plaintiffs served Reyes and Dill with cease-and-desist letters that put them on notice of their alleged ongoing misconduct and demanded they cease unauthorized activity related to the Report. ECF No. 1 ¶ 105; ECF No. 37-21; ECF No. 37-22. Despite this, Reyes and Dill submitted a set of evidentiary materials to the Colorado Family Court around April 23, 2025 that contained the Report with redactions (presumably made by Reyes and Dill), as well as the cease-and-desist letters. ECF No. 1 ¶ 108. During the final hearing in the Colorado Family Court proceeding, Reyes and Dill secured the live testimony of the Army Military Police Investigator involved in the Incident without the Army's prior authorization or a valid subpoena. *Id.* ¶ 111.

//

//

4

## 2.    The Report

The Report included social security numbers, Department of Defense ID

numbers, dates of birth, addresses, and sensitive personal details of Truss, Moore,

and their minor children, as well as the following disclosure:

> Information contained in this report is Law Enforcement Sensitive
> containing Controlled Unclassified Information (CUI), categories:
> PRVCY, LEI, INV. Dissemination is controlled respectively by
> DACID or OPMG based on Army Regulation 19045 (Law
> Enforcement Reporting), **limited to authorized holders, and
> cannot be further distributed.**

*Id.* ¶¶ 42–43 (emphasis in original).

Concurrently with the Colorado Family Court proceedings, Moore contacted

the Department of the Army FOIA Division to confirm whether they released the

Report to Reyes or Dill.  *Id.* ¶ 47.  Subsequently, an investigation of Reyes was

initiated for retrieving the Report under false pretenses and disseminating it over

an unsecured network.  *Id.* ¶ 50.  The Chief of Department of the Army FOIA

Division verified that the Department of the Army Criminal Investigation

Command did not release the Report to anyone, and they did not receive a FOIA

request from Reyes or Dill.  *Id.* ¶ 51; *see also*, ECF No. 37-7.

Moore also met with the Schofield Barracks Chief of Police, who allegedly

confirmed that Reyes contacted an Army civilian federal administrative worker to

obtain documents related to the Report and successfully acquired the Report by

providing Truss' social security number and falsely stating her daughter was involved in the Incident.  ECF No. 1 ¶¶ 52–54; *see also*, ECF No. 37-3.  The Chief of Police assured Moore that he would order Reyes to not utilize the Report.  ECF No. 1 ¶¶ 55, 84; ECF No. 37-5.  Moore later filed a police report with the Honolulu Police Department to document that Reyes unlawfully obtained and possessed the Report by providing false information to a federal employee.  ECF No. 1 ¶ 56; ECF No. 37-19.

Separately, Truss filed a congressional inquiry to the Honorable Ed Case, United States House of Representatives.  ECF No. 1 ¶ 57; ECF No. 37-24.  Around June 2025, the Garrison Commander of Schofield Barracks responded to the inquiry and confirmed that an employee at Schofield Barracks mistakenly sent the unredacted Report to Reyes and the Provost Marshal conducted a thorough inquiry and took appropriate administrative action.  *Id.*  This motivated Truss to file a second formal police report with the Honolulu Police Department to document Reyes' ongoing harassment, including her allegedly unlawful and continued use of the Report and continued intrusion into his personal life.  ECF No. 1 ¶ 60; ECF No. 37-20.

Meanwhile, Dill obtained another copy of the Report via FOIA.  *Id.* ¶¶ 85–93.  However, the copy was heavily redacted and removed the personal information of Truss and Moore, the military officers, investigators, and other

protected personnel.  *Id.* ¶ 102.  Consequently, there are a few versions of the Report: (1) the completely unredacted version that Reyes obtained; (2) the official FOIA version; and (3) a partially redacted version that Reyes submitted in Colorado and (as described below) Hawaiʻi state court.

### 3.    Alleged Additional Harassment by Reyes

Plaintiffs aver that Reyes has made repeated and inappropriate contact with Truss' military chain of command to interfere with his professional standing and damage his reputation.  ECF No. 1 ¶ 122.  Around February 18, 2025, Reyes emailed Truss' Commander a series of false accusations regarding Truss' character and conduct, which ultimately led to a formal reprimand and negative counseling statement.  *Id.* ¶¶ 123–27; *see also* ECF No. 37-17.  As a result, Truss alleges that he was subjected to a hostile work environment and emotional distress.  ECF No. 1 ¶ 129.

Reyes has also "demonstrated patterns of obsessive and intrusive behavior" and has been harassing Plaintiffs to "rekindle a romantic relationship" with Truss. *Id.* ¶¶ 29–30.  Reyes allegedly monitored Moore's social media activity by viewing her personal pages, posts, and content "without consent or legitimate reason."  *Id.* ¶ 31; ECF No. 37-28.  Reyes further sought to manipulate and influence the family court proceedings by attempting to alter the contents of the Report to falsely

include that her daughter was a victim and present during the Incident.  ECF No. 1 ¶¶ 69–70; ECF No. 37-3.

### 4.    Hawaiʻi Family Court Proceedings

On June 19, 2025, Truss was granted a Temporary Restraining Order ("TRO") against Reyes by the State of Hawaiʻi Family Court First Circuit ("Hawaiʻi Family Court") to protect Truss from further harassment and unwanted contact.  ECF No. 1 ¶ 134; *see also* ECF No. 37-25.  Reyes then requested a trial in response to the TRO, during which she named Dill as a witness.  ECF No. ¶ 135; ECF No. 37-26.  During the first TRO hearing, Reyes allegedly used a partially-redacted version of the Report instead of the official FOIA version.  ECF No. 1 ¶ 137.  The Hawaiʻi Family Court eventually dismissed the action with prejudice on August 18, 2025, finding that Truss "had not proven the material allegations in the petition by a preponderance of the evidence and [Reyes] has shown good cause to why the order should not be continued[.]"  *See* ECF No. 43-3 at 6–7.

### B.    Procedural History

Proceeding pro se, Plaintiffs filed their Complaint on August 14, 2025.  ECF No. 1.  They asserted the following claims: Harassment against all Defendants (Count I); Invasion of Privacy: Intrusion Upon Seclusion against all Defendants (Count II); Invasion of Privacy: False Light against all Defendants (Count III); Public Disclosure of Private Facts against all Defendants (Count IV); Defamation

and False Representation against all Defendants (Count V); Abuse of Process against all Defendants (Count VI); Misuse of Confidential Information against all Defendants (Count VII); Intentional Infliction of Emotional Distress ("IIED") against all Defendants (Count VIII); Civil Conspiracy against all Defendants (Count IX); Attorney Misconduct against Dill and New Leaf (Count X); Negligent Infliction of Emotional Distress ("NIED") against Dill and New Leaf (Count XI); and Negligence/Vicarious Liability/Respondeat Superior against New Leaf (Count XII).

On September 2, 2025, the Court issued an Order to Show Cause for Why the Action Should Not be Dismissed Without Prejudice ("OSC") because Plaintiffs' Complaint lacked sufficient detail to ascertain whether it had jurisdiction over the matter.  ECF No. 15.  Plaintiffs timely responded to the OSC, which satisfied the Court's jurisdictional concerns.  *See* ECF Nos. 17, 19.

Plaintiffs filed the instant Motion on October 20, 2025, along with a Motion to Seal Documents ("Motion to Seal").  ECF Nos. 37, 38.  Plaintiffs sought to seal five versions of the Report that had various levels of redactions.  *See* ECF No. 38 at 5–6.  The Court denied Plaintiffs' Motion to Seal without prejudice because Plaintiffs failed to articulate compelling reasons to justify sealing the Report in its entirety, particularly because most versions were already redacted or made public outside the Court.  *See* ECF No. 41.  Dill and New Leaf filed their opposition

9

("New Leaf Opposition") on November 18, 2025, *see* ECF No. 43, and Reyes filed

her opposition ("Reyes Opposition") on November 20, 2025, *see* ECF No. 47.

Plaintiffs replied on December 5, 2025.  ECF No. 50.  The Court elected to rule on

the Motion without a hearing pursuant to Local Rule 7.1(c).  ECF No. 52.

On December 29, 2025, the Court issued another Order to Show Cause,

demanding Plaintiffs explain why sanctions should not be imposed for their

citations to fictitious and improper legal authority in their briefs.  *See* ECF No. 51.

Plaintiffs responded on January 6, 2026, explaining they had used "drafting

assistance tools" that "inadvertently" included improper legal citations, but they

did not intend to mislead the Court and asked the Court not to impose sanctions.

*See* ECF No. 53.  The Court decided to proceed with the Motion but struck the

fictitious and improper legal authority from Plaintiffs' briefs and also warned them

that further violations would result in more serious sanctions.  *See* ECF No. 54.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 65(a) allows courts to issue preliminary

injunctions.  Fed. R. Civ. P. 65(a).  "[The] purpose of a preliminary injunction . . .

is to preserve the status quo and the rights of the parties until a final judgment

issues in the cause."  *Ramos v. Wolf*, 975 F.3d 872, 887 (9th Cir. 2020) (alterations

in original) (internal quotation marks and citation omitted).

To obtain preliminary injunctive relief, a plaintiff must establish:  (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in favor of the plaintiff, and (4) an injunction is in the public interest.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted).

The Ninth Circuit also employs a "sliding scale" approach to preliminary injunctions, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  The issuance of a preliminary injunction may be appropriate when there are "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.* at 1135.

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief"; it is "never awarded as of right."  *Winter*, 555 U.S. at 22, 24 (citations omitted).  "[C]ourts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief'", and should be particularly mindful, in exercising their sound discretion, of the "public consequences in employing the extraordinary remedy of injunction."  *Id.* at 24 (citations omitted).

11

### III.    DISCUSSION

Plaintiffs move for a preliminary injunction because Defendants allegedly have been harassing them by using information gleaned from the Report.  *See* ECF No. 37 at 29–30.  Plaintiffs request that the Court:

1. Order Defendants to return or destroy all copies of non-FOIA versions of the Report and certify compliance with the Court;

2. Enjoin Defendants, and "all those acting in concert with them," from possessing, using, and distributing any non-FOIA versions of the Report;

3. Enjoin Defendants from contacting military, law enforcement, or third parties using information derived from the unredacted Report;[2]

4. Prohibit Defendants from using any information derived from the unredacted Report in any judicial, administrative, or employment-related proceeding; and

5. Enjoin Defendants from further harassing Plaintiffs and their family through "misuse of the [R]eport, false witness solicitation, police calls, defamatory communications, or any other related conduct[.]"

---

[2]  Plaintiffs ask the Court to enjoin Defendants "from contacting, harassing, or attempting to solicit information from military, law enforcement, or third parties using information derived from the unauthorized report" and "from contacting Plaintiff's [sic] employers, military chain of command, or unrelated third parties in connection with the report or matters contained therein" but the Court fails to see how these requests differ from each other.  *Id.* at 5–6.

*Id.* at 5–6.  As an initial matter, Defendants argued that an order to destroy or

return all copies of the Report is a mandatory injunction.  *See* ECF Nos. 43 at 15,

47 at 24–25.  Plaintiffs didn't dispute this and effectively withdrew the request.

*See* ECF No. 50 at 7 ("Plaintiffs seek only a prohibitory injunction, one that

prevents Defendants from continuing to misuse improperly obtained information

and cease harassment.").  For the rest, Plaintiffs argue that they meet all four

factors for a preliminary injunction because the record establishes a likelihood of

success on the merits and irreparable harm, the equities tip sharply in Plaintiff's

favor, and such injunction would serve the public interest.  *See id.* at 30.  The

Court finds that Plaintiff fails to meet any of the four elements, as explained below.

## A.   Irreparable Harm

Plaintiffs contend that the mere disclosure of their "sensitive personal

identifiers constitutes irreparable harm" but they also claim that they're harmed by

further distribution of the confidential information and Reyes continues to harass

Plaintiffs.  ECF No. 37 at 41.  Dill and New Leaf argue that Plaintiffs fail to show

irreparable harm because the filings they made of the Report were protected under

either the Colorado Family Court docket or confidentiality restrictions required

during mediation.  *See* ECF No. 43 at 16–18.  Reyes also responds that Plaintiffs

fail to adequately articulate any future harm regarding further use of the Report or

concerns over Plaintiffs' children.  *See* ECF No. 47 at 21–22.  The Court agrees that Plaintiffs haven't demonstrated irreparable harm.

"A plaintiff seeking preliminary relief must 'demonstrate that irreparable injury is likely in the absence of an injunction.'"  *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) (citation omitted).  "At a minimum, a plaintiff seeking preliminary injunctive relief must demonstrate that it will be exposed to irreparable harm."  *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted).  As a prerequisite to injunctive relief, "a plaintiff must *demonstrate* immediate threatened injury"; a speculative injury is not irreparable. *Id.* (citations omitted).  "Irreparable harm is . . . harm for which there is no adequate legal remedy, such as an award of damages."  *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (citation omitted).

### 1.    Purported Injury by all Defendants

Plaintiffs first assert that they have suffered injury by having their personal identifying information exposed.  ECF No. 37 at 40.  However, that harm has already occurred and Plaintiffs seek damages through this lawsuit.  Ordering Defendants not to further utilize the non-FOIA versions of the Report wouldn't undo the alleged harm that they suffered from the initial disclosure.  Indeed, Plaintiffs argue that once their information has been exposed, it cannot be unrung.

14

ECF No. 50 at 5.  Thus, Plaintiffs cannot establish irreparable harm based on the Report's initial disclosure.

Plaintiffs also contend that further disclosure is harmful, but they fail to articulate the injury they would suffer since the information is already released. Defendants are required to redact Plaintiffs' Social Security numbers, dates of birth, and identities of minor children, *see* Fed. R. Civ. P. 5.2, so an injunction prohibiting Defendants' disclosure of that information would be redundant. Otherwise, Plaintiffs' personal identifiers don't affect whether they have a strong enough privacy interest over the *substance* of the Report to constitute irreparable harm.

Once information has already been made public, the privacy interests over that information are "greatly diminished" and irreparable harm is unlikely. *Olson v. Major League Baseball*, 29 F.4th 59, 92 (2d Cir. 2022).  Ironically, Plaintiffs voluntarily filed the Report in both state and federal courts in Hawaiʻi, *see* ECF No. 43-4; ECF No. 1-2, which not only undermines their position but forces Defendants to utilize the Report to defend themselves.  Because the Report is the main contention of this litigation, the Court will not bar Defendants from using it here.  Any other unarticulated injury from further use of the Report is speculative. *See Caribbean Marine Servs.*, 844 F.2d at 674.

Most of the legal authorities Plaintiffs cite to support their position were either improperly cited or fictitious cases. *See, e.g.*, *Doe v. Regents of Univ. of Cal.*, 891 F.3d 1147, 1158 (9th Cir. 2018) (misquoted/misrepresented); *Robbins v. Lower Merion Sch. Dist.*, 592 F. Supp. 2d 556, 576 (E.D. Pa. 2009) (nonexistent case); *N.D. Cal. v. Tesla, Inc.*, 2019 WL 4645237, at *4 (N.D. Cal. Sept. 24, 2019) (nonexistent case); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607 (1982) (misquoted/misrepresented); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834–35 (no mention of preliminary injunction or release of confidential material).

Because the Court has stricken these cases from Plaintiffs' briefs, Plaintiffs' sole legal authority in support of their contention is *In re Zappos.com, Inc.*, 888 F.3d 1020, 1027–29 (9th Cir. 2018). However, *In re Zappos.com* doesn't further their cause. While the Ninth Circuit held that plaintiffs have *standing* to bring a claim when their sensitive personal information has been stolen, such injury doesn't establish irreparable harm for purposes of a preliminary injunction. *Id.* Indeed, the court concluded that plaintiffs "could be compensated through damages" if they succeeded on their claims. *Id.* at 1030. All these factors illustrate that Plaintiffs failed to establish that they would be irreparably harmed by Defendants' further use of the Report.

## 2.  Purported Injury Caused by Dill and New Leaf

Plaintiffs claim Dill and New Leaf harassed them when they listed the Military Police Officer, Military Police Investigator, and Moore as witnesses to the Colorado Family Court case.  ECF No. 37 at 23.  However, they don't allege further or imminent harassment against Dill and New Leaf, which is enough to find there is no irreparable harm.

In any event, this Court cannot control the proceedings of another court.  *See e.g.*, *Courthouse News Serv. v. Planet*, 750 F.3d 776, 790 (9th Cir. 2014) (courts should abstain "where the plaintiff seeks an 'ongoing federal audit' of the state judiciary") (citing *E.T. v. Cantil–Sakauye,* 682 F.3d 1121, 1124 (9th Cir. 2011)).  Each respective state court has the inherent power to determine whether documents used in its court are permissible.  *Cf. Enos v. Pac. Transfer & Warehouse, Inc.*, 79 Haw. 452, 457, 903 P.2d 1273, 1278 (1995) ("[C]ourts have inherent equity, supervisory, and administrative powers as well as inherent power to control the litigation process before them." (internal quotation marks omitted)); *Bd. of Cnty. Comm'rs of Weld Cnty. v. Nineteenth Jud. Dist.*, 895 P.2d 545, 547–48 (Colo. 1995) (courts have inherent "powers reasonably required to enable a court to perform efficiently its judicial functions, to protect its dignity, independence, and integrity, and to make its lawful actions effective").  Thus, the Court lacks power

to enjoin Dill and New Leaf from further "harassment" in another court, which is, regardless, speculative.

### 3.    Purported Injury Caused by Reyes

Plaintiffs allege that Reyes continues to harass them through interference with Truss' chain of command, repeated police calls, interference with Truss' daughter's childcare provider, and "unwanted intrusions into their family life[,]" but they are vague about the injury they will face without the Court's intervention. ECF No. 37 at 41.  While Plaintiffs claim Reyes' contact with Truss' chain of command has damaged his workplace reputation, Plaintiffs haven't stated how Truss may be harmed further.  Plaintiffs only described one instance in their complaint when Reyes contacted Truss' chain of command and claimed Truss was failing to provide child support.  *See* ECF No. 37-16.  Even assuming Reyes was lying, that one event doesn't support a pattern that she will continue to improperly contact Truss' employer.  Additionally, Truss doesn't allege that his chain of command wrongly reprimanded him, so Reyes' original complaint very well may have been justified.

Finally, damages are available if Reyes defames Truss or unlawfully interferes with his employment; indeed, Plaintiffs assert multiple tort claims that will provide damages should they prevail.  Because Plaintiffs' alleged exposure to

harm by Defendants has a legal remedy, the extraordinary remedy of a preliminary injunction is unnecessary.  *See Ariz. Dream Act Coal.*, 757 F.3d at 1068.

Plaintiffs' failure to demonstrate they will suffer irreparable harm in the absence of an injunction is enough to deny their Motion.  *See Caribbean Marine Servs.*, 844 F.2d at 674.  But even if Plaintiffs showed they were likely to face irreparable harm, they haven't established a likelihood of success on the merits to weigh in their favor.

## B.   Likelihood of Success on the Merits

In their Motion, Plaintiffs assert that they are likely to succeed on the merits of the following claims: (1) intrusion upon seclusion/invasion of privacy; (2) unauthorized dissemination and misuse of confidential information; (3) abuse of judicial process; (4) violations of Army Regulation ("AR") 190-45 and Army Confidentiality Standards; (5) harassment, defamation, intentional and negligent infliction of emotional distress; (6) bad faith conduct by counsel; (7) and Privacy Act violation.  ECF No. 37 at 8.  These don't include all twelve of Plaintiffs' claims (nor do they fully match what is in the Complaint), so the Court will only address the arguments that Plaintiffs proffer in their Motion.

"Likelihood of success on the merits 'is the most important' *Winter* factor; if a movant fails to meet this 'threshold inquiry,' the court need not consider the other factors . . . in the absence of 'serious questions going to the merits[.]'"

19

*Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (cleaned

up) (citations omitted).  Even when Plaintiffs allege enough facts to state a claim,

the likelihood of success standard requires a much stronger showing.  *See Tohono*

*O'odham Nation v. U.S. Dept. of the Interior*, 138 F.4th 1189, 1202 (9th Cir. 2025)

(recognizing "more burdensome likelihood-of-success standard used for motions

for preliminary injunctions" than for motions to dismiss) (citations omitted).

## 1.      Bad Faith Conduct by Counsel

Plaintiffs claim that Dill repeatedly misused the Report, emailed the

unredacted versions to an army officer, and allowed herself to be named as a

witness in the Hawai'i litigation.  ECF No. 37 at 38.  They also argue that Dill's

misconduct exposes her law firm, New Leaf, to vicarious liability.  *Id.*  New Leaf

and Dill respond that they didn't owe Plaintiffs a duty of care and thus cannot be

liable for any sort of attorney misconduct claim.  ECF No. 43 at 23.  Plaintiffs

don't specify what cause of action relates to their allegations of attorney

misconduct, but presuming they meant to assert a legal malpractice claim, they fail.

Although Plaintiffs do not even mention which state's law applies to their

common law claims, Dill and New Leaf correctly maintain that Hawai'i and

Colorado laws apply similar elements here.  In Hawai'i, a legal malpractice claim

requires: "(1) the existence of an attorney-client relationship; (2) the existence of a

duty on the part of a lawyer; (3) breach of that duty; and (4) damages flowing from

the breach." *McDevitt v. Guenther*, 522 F. Supp. 2d 1272, 1281 (D. Haw. 2007)

(citing *Boskoff v. Yano,* 57 F.Supp.2d 994, 998 (D.Haw.1998)). "If no attorney-

client relationship existed, no claim for legal malpractice can be asserted." *Id.*

Similarly, Colorado requires: "(1) the attorney owed a duty of care to the client; (2)

the attorney breached that duty; and (3) by breaching his duty, the attorney

proximately caused damage to the client." *Hopp & Flesch, LLC v. Backstreet*, 123

P.3d 1176, 1183 (Colo. 2005).

There is no dispute that Dill had an attorney-client relationship with Reyes—

not Plaintiffs. Plaintiffs do not allege that Dill owed them any sort of duty of care,

so they fail to even state a legal malpractice claim. While Plaintiffs cite *In re

Snyder*, 472 U.S. 634, 645 (1985), to support their claim, the case is inapposite

because the attorney at issue was challenging the district court's sanction against

him. In other words, *In re Snyder* doesn't provide Plaintiffs with a cause of action

or cognizable legal theory. Plaintiffs' claims regarding attorney misconduct are

unlikely to succeed. *See Jember v. Cnty. of Santa Clara*, 2017 WL 3232483, at *2

(N.D. Cal. July 31, 2017) (party cannot establish likelihood of success if they fail

to state a claim) (citing *Winter*, 555 U.S. at 22).

### 2. Intrusion Upon Seclusion/Invasion of Privacy

Plaintiffs argue that they are likely to succeed against Reyes for intrusion

upon seclusion or invasion of privacy because she unlawfully acquired the

21

unredacted Report.[3]  *See* ECF No. 37 at 31.  Reyes responds that Plaintiffs didn't

provide evidence proving she used deceitful means or misled anyone to obtain the

Report and it was ultimately the Army employee's fault that the unredacted Report

was released.  *See* ECF No. 47 at 16.

Hawaiʻi recognizes four types of invasion of privacy: (1) unreasonable

intrusion upon the seclusion of another; (2) appropriation of another's name or

likeness; (3) unreasonable publicity given to the other's private life; and (4) false

light.  *Mehau v. Reed*, 76 Hawaiʻi 101, 111, 869 P.2d 1320, 1330 (1994); *Chapman*

*v. Journal Concepts, Inc.*, 528 F. Supp. 2d 1081, 1099 (D. Haw. 2007).  Plaintiffs

only focus on their intrusion upon seclusion claim,[4] which consists of three

elements: "(1) intentional intrusion, physically or otherwise, (2) upon the solitude

or seclusion of another or his private affairs or concerns, (3) that would be highly

---

[3]  While Plaintiffs allege invasion of privacy claims against Dill and New Leaf in
their Complaint, they do not argue they are likely to succeed against them here,
which supports the Court denying a preliminary injunction against Dill and New
Leaf.

[4]  For the first time in their Reply, Plaintiffs argue that they are likely to succeed on
a false light claim.  *See* ECF No. 50 at 12.  However, the Court "need not consider
arguments raised for the first time in a reply brief" and it declines to do so here.
*Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citing *Koerner v. Grigas,*
328 F.3d 1039, 1048 (9th Cir. 2003)).

offensive to a reasonable person." *Taylor v. Franko*, 2011 WL 2118270, at *7 (D.

Haw. May 2, 2011) (citing Restatement (Second) of Torts § 652B (1977)).

For the first two elements, the current record doesn't adequately show that

Reyes intended to intrude upon Plaintiffs' private affairs. Despite allegations that

Reyes misled an Army official to obtain the unredacted Report, the record only

demonstrates that Reyes requested the Report from the Schofield Barracks Police

Station and an employee mistakenly gave it to her, *see* ECF No. 37-3, which

doesn't prove Reyes intended to garner information that she knew she wasn't

authorized to have. *Cf. Taylor*, 2011 WL 2118270, at *7 (listing examples of

intrusion upon seclusion as "physical intrusion into plaintiff's home, using

mechanical aids such as wire taps or binoculars to overhear or oversee plaintiff's

private affairs, or opening plaintiff's personal mail") (citing Restatement (Second)

of Torts § 652B cmt. b (1977)).

For the last element, the "reasonable person" standard is typically a question

for a jury. *See Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1078 (N.D. Cal.

2016). But on this record, the Court does not consider Reyes' conduct "highly

offensive" because she could have requested the Report based on the knowledge

she had at the time, and the official at the Schofield Barracks Police Station

voluntarily gave her the Report. More fact-finding is necessary. Thus, Plaintiffs

haven't shown they are likely to win on their intrusion upon seclusion claim.

### 3.   Violations of AR 190-45 and Army Confidentiality Standards and the Privacy Act[5]

Plaintiffs further argue that they are likely to succeed on their claims that Defendants' request for the unredacted Report and dissemination thereafter violated AR 190-45 and the Privacy Act.  ECF No. 37 at 35.  Reyes doesn't directly address these regulatory or statutory claims but instead maintains that she did not misuse the information.  ECF No. 47 at 15.  Dill and New Leaf argue that the Army regulations and Privacy Act don't provide a private cause of action against them.  ECF No. 43 at 21.  The Court agrees with Dill and New Leaf.

Plaintiffs reason that Defendants' "acquisition and civilian use" of the Report violated Sections 3-2, 3-3, and 3-5 of AR 190-45.  ECF No. 37 at 35.  Section 3-2 states that "[c]riminal record information contained in [Military Police] documents will not be disseminated unless there is a clearly demonstrated, official, need to know."  Sections 3-3 and 3-5 provide that FOIA and the Privacy Act authorize the Army to deny access to criminal records.

AR 190-45 is a directive to Army personnel regarding military police reports.  *See* AR 190-45 at *i*.  Nothing in AR 190-45 provides Plaintiffs with a private cause of action, especially against Defendants, who could not have

---

[5]  The Court notes that Plaintiffs' Privacy Act subsection is slightly different but suffers from the same problems, *see* ECF No. 37 at 39, so it will combine its discussion here.

"violated" its sections because it does not govern private individuals.[6]  The Army had original control over the Report and mistakenly gave an unredacted copy to Reyes.  While Defendants were never entitled to an unredacted version of the Report, they were only in possession of the Report because Army personnel failed to follow the disclosure regulations.  Furthermore, nothing in AR 190-45 regulates Defendants' later disclosure of the Report as private citizens.

As for purported claims under the Privacy Act, civil remedies are "specifically limited to actions against agencies of the United States Government.  The civil remedy provisions of the statute *do not apply against private individuals*, state agencies*, private entities, or state and local officials[.]*"  *Dittman v. California*, 191 F.3d 1020, 1026 (9th Cir. 1999) (citations omitted) (emphasis added and omitted).  Plaintiffs thus cannot maintain a Privacy Act claim against Defendants, who are indisputably either a private individual or a private entity.  Plaintiffs are unlikely to succeed on claims for violations of AR 190-45 and the Privacy Act.

### 4.    Unauthorized Dissemination and Misuse of Confidential Information

Plaintiffs argue that they will likely prevail on their misuse of confidential information and unauthorized dissemination claims.  ECF No. 37 at 31–32.

---

[6] Although Reyes is a military servicemember, she made clear she was requesting the Report based on her private interests.  *See* ECF No. 37-17 at 9–10.

Defendants respond that Plaintiffs have not provided any evidence of actual misuse because they only used non-FOIA versions of the Report in closed proceedings. The Court finds that these claims are afflicted by a similar issue as Plaintiffs' preceding regulatory and statutory claims: Plaintiffs again don't specify the cause of action and legal elements that support their claim. Without directing the Court to proper legal authority, the Court has difficulty finding that Plaintiffs are likely to succeed here.

First, in addition to Plaintiffs' failure to include a separate "unauthorized dissemination" claim in the Complaint, unauthorized dissemination is not a private right of action in Hawaiʻi, *see* Haw. Rev. Stat. § 708-839.55 (2024) (criminal statute), and Colorado only recognizes a private cause of action for unauthorized disclosure of "intimate images," e.g., revenge porn, *see* Colo. Rev. Stat. § 13-21-1407. Generally, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). As such, "courts consistently dismiss civil causes of action based on criminal statutes, including Hawaii criminal statutes." *Tuomela v. Waldorf-Astoria Grand Wailea Hotel*, 2020 WL 3490027, at *1–2 (D. Haw. June 26, 2020) (collecting cases).

Second, claims for misuse of confidential information typically pertain to commercial disputes. *See, e.g., BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*,

26

123 Haw. 314, 323–24, 235 P.3d 310, 319–20 (2010) (defining confidential

information as "data, technology, or know-how that is known by a substantial

number of persons in a particular industry (such that its status as a technical 'trade

secret' is in doubt) but that, nonetheless, retains some economic and/or competitive

value") (quoting Robert Unikel, *Bridging the "Trade Secret" Gap: Protecting*

*"Confidential Information" Not Rising to the Level of Trade Secrets,* 29 Loy. U.

Chi. L.J. 841, 844 (Summer 1998); *see also, e.g.*, *Wright Med. Tech., Inc. v.*

*Paragon 28, Inc.*, 2019 WL 4751807, at *6 (D. Colo. Sept. 30, 2019) (discussing

Colorado state law and characterizing misuse of confidential information as

possible civil theft or conversion of trade secrets).

However, even if Plaintiffs had pointed to a general "misuse of confidential

information" claim that was recognized under Hawai'i or Colorado law, the Court

isn't convinced that Plaintiffs have shown Defendants misused the information in

the Colorado Family Court because they only submitted the unredacted Report in

private settings.  Defendants first sent the Report to a mediator and Truss' counsel,

who both have a duty of confidentiality.  *See* Colo. Rev. Stat. § 13-22-307(2).

They also submitted it in a closed filing, *see* ECF No. 43-1, and it would be the

Colorado Family Court's jurisdiction to decide whether such disclosure was

improper.  Thus, Plaintiffs haven't shown they are likely to succeed on the merits

here.

27

### 5.    Abuse of Judicial Process

Plaintiffs contend that Defendants' use of the Report in the Colorado Family Court proceedings was an abuse of judicial process.  ECF No. 37 at 33–34.  New Leaf and Dill generally argue abstention principles apply to the Colorado Family Court proceedings.  ECF No. 43 at 22–23.  Reyes maintains that Plaintiffs failed to show evidence of misuse.  ECF 47 at 17.  Plaintiffs are not likely to succeed on an abuse of process claim.

Under Colorado law, abuse of process is the "use of a legal proceeding primarily to accomplish a purpose that the proceeding was not designed to achieve."  *Yadon v. Lowry,* 126 P.3d 332, 337 (Colo. App. 2005) (citing Restatement (Second) of Torts § 682 (1977) and *Am. Guarantee & Liab. Ins. Co. v. King,* 97 P.3d 161, 170–71 (Colo.App.2003)).[7]  Plaintiffs seem to contend that, because Defendants obtained an unredacted version of the Report unlawfully, their use of that Report in a court proceeding is an abuse of process.  ECF No. 37 at 33.  They don't allege Defendants improperly used a legal proceeding, only that the use of the Report was improper.  As explained above, whether the use of the Report was improper was the Colorado Family Court's decision to make.  This Court may decide later whether non-FOIA versions of the Report are admissible at trial, but

---

[7]  Because Plaintiffs' allegations for abuse of process only pertain to the Colorado Family Court proceedings and not the Hawai'i state court proceedings, the Court only applies Colorado law.

that has nothing to do with an abuse of process.  Plaintiffs ultimately are not likely to succeed (let alone proceed) on their abuse of process claim based on any alleged misuse of the Report.

### 6.    Harassment, Defamation, Intentional and Negligent Infliction of Emotional Distress

Finally, Plaintiffs assert that they will prevail on various common law torts based on Defendants' improper conduct during the Colorado Family Court proceedings and Reyes' allegedly improper contact with Truss' military chain of command, among other things.  *See* ECF No. 37 at 36–37.  New Leaf and Dill contend that there can be no harassment "when the parties are acting within the appropriate procedural rules regarding discovery in a matter" and abstention principles apply because the Hawaiʻi TRO was dismissed with prejudice.  ECF No. 43 at 25.  Reyes argues that Plaintiffs failed to demonstrate they would meet any elements of the torts.  *See* ECF No. 47 at 19.

In Hawaiʻi, harassment is a crime and—as Plaintiffs well know—may be a basis for obtaining a temporary restraining order.  Haw. Rev. Stat. § 711-1106 (criminal harassment); Haw. Rev. Stat. § 604-10.5 (giving power to the state district courts to enjoin, prohibit, or temporarily restrain harassment).  However, there is no private right of action to enforce criminal statutes, and so "harassment" cannot serve as a civil cause of action.  *See Tuomela*, 2020 WL 3490027, at *1–2.  Moreover, the Court cannot grant an injunction based on Haw. Rev. Stat. § 604-

29

10.5 because the state court already denied Plaintiffs' application based on the same facts. *See* ECF No. 37-25; ECF No. 43-4; *Carmona v. Carmona*, 603 F.3d 1041, 1051 (9th Cir. 2010) (holding that *Rooker–Feldman* doctrine deprived district court from subject matter jurisdiction to overturn an order by a family state court).

Otherwise, harassment is usually subsumed in another claim, such as employment discrimination or IIED. *See, e.g.*, *Medeiros v. Akahi Servs., Inc.*, 2018 WL 2449189, at *5 (D. Haw. May 31, 2018) (discussing harassment claims within the context of IIED and employment discrimination). Plaintiffs don't allege an employment relationship with Defendants, but since they assert an IIED claim, the Court will address the elements of that, as well as their NIED and defamation claims.

### a.    *Intentional Infliction of Emotional Distress*

To establish an IIED claim, Plaintiffs must show: (1) that the act allegedly causing the harm was intentional or reckless, (2) that the act was outrageous, and (3) that the act caused (4) extreme emotional distress to another. *Enoka v. AIG Hawaii Ins. Co., Inc.*, 109 Haw. 573, 559, 128 P.3d 850, 872 (Haw. 2006); *see also Archer v. Farmer Bros. Co.*, 70 P.3d 495, 499 (Colo. App. 2002), *aff'd*, 90 P.3d 228 (Colo. 2004).

The term "outrageous" has been construed to mean "without just cause or excuse and beyond all bounds of decency." *Enoka*, 109 Haw. at 559, 128 P.3d at 872 (citing *Lee v. Aiu*, 85 Haw. 19, 34, n.12, 936 P.2d 655, 670 n.12 (Haw. 1997)); *see also Archer*, 70 P.3d at 499 ("Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient; only conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community, will suffice."). "Acting with tortious or criminal intent, or intent to inflict emotional distress, does not necessarily rise to the levels of outrageousness required for an IIED claim." *Barber v. Ohana Military Cmtys., LLC*, 2014 WL 3529766, at *10–11 (D. Haw. July 15, 2014) (citing *Soone v. Kyo-Ya Co., Ltd.*, 353 F. Supp. 2d 1107, 1116 (D. Haw. 2005)). Furthermore, "extreme emotional distress" may constitute mental suffering, mental anguish, nervous shock, and other "highly unpleasant mental reactions." *Enoka*, 109 Haw. at 559, 128 P.3d at 872 (citations omitted).

For New Leaf and Dill, Plaintiffs only contend that Dill's decisions to use the information in the Report during the Colorado Family Court proceedings and add Moore and the Army Investigator on the witness list were harassment. ECF No. 37 at 37. But Plaintiffs haven't explained how Dill's decisions went "beyond the bounds of ordinary litigation." *Id.* And though Plaintiffs allege that the Army

31

Investigator's testimony was prejudicial and unauthorized, Plaintiffs have not

suggested that Dill forced that investigator to testify, and the Colorado Family

Court was in the best position to make that determination.

Next, Plaintiffs list ways that Reyes harasses them, but the Court is not

convinced such conduct is likely to be considered outrageous.  For example, there

is no indication that Reyes' text messages included threats.  And while she

arguably made advances on Truss a couple of times around 2023, there is no

evidence that such conduct continued or that Truss communicated to her that it was

unwanted.  ECF No. 37-29.  Furthermore, the screenshots of Reyes viewing

Moore's social media don't come close to supporting "outrageous" conduct.  ECF

No. 37-28.  But even if the Court found Reyes' conduct is likely outrageous,

Plaintiffs have not shown that these acts have caused them *extreme* emotional

distress.  Aside from bare and conclusory statements that they have suffered severe

emotional distress, Plaintiffs have not detailed how their mental reactions could be

considered extreme.  *See* ECF No. 37 at 38.

### b.    *Negligent Infliction of Emotional Distress*

For NIED, Plaintiffs must show: "(1) that the defendant engaged in

negligent conduct; (2) that the plaintiff suffered serious emotional distress; and (3)

that such negligent conduct of the defendant was a legal cause of the serious

emotional distress."  *Barber*, 2014 WL 3529766, at *10–11 (citing *Wood v.*

*Greenberry Fin. Servs., Inc.*, 907 F. Supp. 2d 1165, 1186 (D. Haw. 2012).  "An

NIED claim is merely a negligence claim alleging a wholly psychic injury.  Duty

and breach of duty are essential elements of an NIED claim and are analyzed

utilizing ordinary negligence principles."  *Id.* (citing *Kahoohanohano v. Dep't of

Human Servs.*, 117 Haw. 262, 306, 178 F.3d 538, 582 (Haw. 2008)); *see also Eng.

v. Griffith*, 99 P.3d 90, 95 (Colo. App. 2004) ("[N]egligent infliction of emotional

distress is predicated upon a viable claim that the defendant negligently violated a

legal duty of care owed to the plaintiff.").

Plaintiffs only assert an NIED claim against New Leaf and Dill.  However,

Plaintiffs fail to allege that Dill and New Leaf owed them any duty.  Additionally,

like their IIED claim, Plaintiffs haven't provided sufficient detail about the

emotional distress that they suffered for the Court to determine that they are likely

to succeed.

### c.    *Defamation*

To establish defamation, Plaintiffs must prove: "(a) a false and defamatory

statement concerning another; (b) an unprivileged publication to a third party; (c)

fault amounting at least to negligence on the part of the publisher . . . ; and (d)

either actionability of the statement irrespective of special harm or the existence of

special harm caused by the publication."  *Gold v. Harrison*, 88 Haw. 94, 100, 962

P.2d 353, 359 (1998) (quoting *Dunlea v. Dappen*, 83 Haw. 28, 36, 924 P.2d 196,

204 (1996)); *see also*, *Coomer v. Donald J. Trump for President, Inc.*, 552 P.3d 562, 581 (Colo. App. 2024).

Plaintiffs only vaguely assert that Dill made defamatory statements in their Motion and do not genuinely contend that they are likely to prevail against her for defamation. In any event, Plaintiffs allege in their Complaint that Defendants are liable for defamation because they submitted a statement in Colorado Family Court that Truss "choked" Moore, which they say is inaccurate because the Report indicated that the Incident did not involve "strangulation." *See* ECF No. 1 ¶¶ 119–20. Although choking and strangling may be considered synonyms, Hawaiʻi law provides criminal penalties for domestic violence involving strangulation, which has specific elements. *See* Haw. Rev. Stat. § 709-906(9). Thus, someone may choke another person without meeting the criminal definition of strangulation. Plaintiffs haven't established a record to show that Defendants' statement submitted to the Colorado Family Court was false.

Otherwise, Plaintiffs seem to argue that they are likely to succeed against Reyes because she made defamatory statements to Truss' chain of command that "misrepresented the circumstances of child support, the cause of the Colorado litigation, the nature of mediation/ court hearings, and the alleged involvement of Mr. Truss' Commander." ECF No. 50 at 12–13. However, more fact finding

needs to be done before the Court (or jury) can find that Reyes' statements were defamatory.

Plaintiffs only presented evidence of one inconsistent statement by Reyes: she represented to Truss' chain of command that he hadn't paid child support since May 2024, but Reyes' Declaration in support of her Opposition stated that Truss had not paid child support since June 2024, with the exception of one payment in October 2024. *Compare* ECF No. 37-17, *with* ECF No. 47-1 ¶¶ 23–24. Such minute discrepancy is unlikely to constitute defamation. *See Gomba v. McLaughlin,* 504 P.2d 337, 339 (Colo. 1972) (holding that defendants are "not required to justify every word of the alleged defamatory matter; it is sufficient if the substance, the gist, the sting, of the matter is true."); *Kohn v. West Hawaii Today, Inc.,* 65 Haw. 584, 590, 656 P.2d 79, 83 (1982) ("[I]t is sufficient if the substance, the gist, the sting, of the matter is true."). Based on this record, Reyes' statement to Truss' chain of command very well may be substantially true. Thus, Plaintiffs have not proven they are likely to succeed on their defamation claim.

## C.    Balance of Equities and Public Interest

The Court will briefly address the last two elements for a preliminary injunction, despite Plaintiffs' failure to show irreparable harm or likelihood of success on the merits of their claims. *See Disney Enters.*, 869 F.3d at 856.

In assessing whether Plaintiffs establish that the balance of equities tip in their favor, "the district court has a 'duty . . . to balance the interests of all parties and weigh the damage to each.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (alteration in original) (citation omitted).  When an injunction's impact "reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." *Id.* at 1139 (citations omitted).  "'The public interest inquiry primarily addresses impact on non-parties rather than parties.'" *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (citation omitted).  It also requires the Court to "'consider whether there exists some critical public interest that would be injured by the grant of preliminary relief.'"  *Cottrell*, 632 F.3d at 1138 (citation omitted); *see Stormans*, 586 F.3d at 1139 ("'[C]ourts . . . should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" (alteration in original) (citation omitted)).

Because Plaintiffs haven't established irreparable harm, the balance of equities don't weigh in their favor when granting an extraordinary remedy such as a preliminary injunction against Defendants.  Furthermore, Plaintiffs' Motion is about a family dispute and only affects their private lives, so a preliminary injunction wouldn't serve the public's interest.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' Motion for

Preliminary Injunction.

IT IS SO ORDERED.

Dated:  Honolulu, Hawai'i, February 27, 2026.



Jill A. Otake
United States District Judge

CIV NO. 23-348 JAO-KJM, *Truss, et al. v. Reyes, et al.*; ORDER DENYING
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 37)